**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MANUEL A. GONZALEZ,**
**ISHMAEL RAMJOHN, and**
**ALELI GONZALEZ,**

    **Plaintiffs,**

v.                                                  Case No.  8:15-cv-240-T-30TBM

**GEICO GENERAL INSURANCE**
**COMPANY,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant GEICO General Insurance Company's Motion for Summary Judgment (Dkt. 98) and Plaintiffs' Response in Opposition (Dkt. 113).  The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes that Defendant's motion should be denied.

## RELEVANT FACTS[1]

This is a third-party insurance bad faith action that stems from an automobile accident that occurred on February 23, 2009, between Plaintiff Ishmael Ramjohn and Lisa Anderson. At that time, Ramjohn was insured by Defendant GEICO General Insurance Company, under an automobile policy providing bodily injury ("BI") coverage in the amount of $100,000 per

---

[1] These facts are interpreted in a light most favorable to Plaintiffs, the non-movants.

person, and $300,000 per occurrence.[2] It is undisputed that Ramjohn was at fault for the accident and that the accident injured Anderson.

On March 4, 2009, Anderson's attorney, James Guarnieri, sent a letter of representation to GEICO seeking information under Fl. Stat. § 627.4137, related to the insurance policy, such as the limits of the liability coverage.

Between April 2009, and October 1, 2009, Guarnieri and GEICO corresponded generally about Anderson's injuries. On October 6, 2009, Guarnieri sent GEICO a letter seeking the $100,000 policy limits within forty days. The letter attached approximately ninety pages of medical records in support of the demand. The records included, in relevant part, a "Final Evaluation" from Michael Williams, DO, who examined Anderson on or about March 6, 2009. The Final Evaluation stated, in relevant part, that an MRI of Anderson's lumbar spine with contrast established an "L5-S1 large left paracentral disc herniation with an annular tear impinging on the left descending sacral nerve roots with edema at the endplates of L5-S1." The Final Evaluation also stated that Anderson sustained a "permanent impairment" and discussed the likelihood of "frequent exacerbations" of the diagnosis.[3] The Final Evaluation also diagnosed Anderson's injuries as follows: "Cephalgia; Cervical m/l sprain/sprain and primary myofascial spasm; Retrolisthesis of C3 and C4 and anterolisthesis of C4-5; Lumbar m/l sprain/strain and myofascial spasm; Multi-level anterolisthesis of

---

[2] Ramjohn was seventeen at the time of the accident. His grandfather, Manuel Gonzalez, and mother, Aleli Gonzalez (formerly Ruiz), were also insureds under the policy.

[3] Based on the records, it appears that Anderson was approximately thirty-eight at the time of the accident. Also, Anderson worked as a waitress during the relevant time.

lumbar spine; Large left paracentral disc pathology at L5-S1; Right Sl joint restriction; Right piriformis spasm; and Intermittent lower extremity paraesthesias/radiculopathy."

The October 6, 2009 letter stated:

> Given the clear liability and extent of the injuries, a verdict in this case would likely exceed the available policy limits. However, in the interest of prompt resolution, my client will accept your stated limits, in exchange for a general release of your insured and driver, if tendered to my office within 40 days of the date of this letter. (I have put a larger timeframe on the demand to allow for our obtaining additional documentation for you. If there are additional delays I will extend such deadline.).

Subsequently, Guarnieri provided GEICO additional records from Williams that further discussed Anderson's injuries and recommended, in relevant part, a "spine surgical evaluation."

On November 12, 2009, within the forty-day demand, GEICO responded and offered $2,581.16, to settle Anderson's claim. The parties then continued to correspond and Guarnieri sent GEICO additional medical records. Based on the additional documentation, on November 19, 2019, GEICO increased its offer for settlement to $2,928.56, and again requested additional documentation. The parties continued to correspond and Guarnieri sent GEICO additional medical records, which indicated, in relevant part, that if Anderson elected to have surgery for an L5-S1 microendoscopic discectomy, the estimated costs for the surgeon's services would be $24,000, not including facility fees or anesthesiologist charges.

Upon receipt of this information, Carl Tims, GEICO's regional liability director, increased GEICO's reserves on the Anderson claim to $100,000.[4]

On December 3, 2009, GEICO requested additional records from Guarnieri, including any surgical records if Anderson elected to undergo surgery, any prior injury information (to include treatment notes and diagnostic tests), the lumbar MRI films, and employment records. The parties continued to correspond with respect to these issues.

On December 9, 2009, Guarnieri informed GEICO that Anderson's surgery was scheduled for the next day, December 10, 2009. The letter enclosed the surgeon's notes on Anderson's evaluation. The notes indicated, in relevant part, that Anderson wished to undergo minimally invasive miscoendoscopic diskectomy with the understanding that she would need additional operative intervention in the future in the form of L5-S1 fusion or artificial disk replacements. Based on this additional information, GEICO increased its offer to $22,500. The record reflects that, although GEICO believed $22,500 was a "fair value based upon other settlements," no witness in this case has an independent recollection as to how GEICO arrived at the $22,500 number.

GEICO continued to request additional information from Guarnieri, including documentation that the surgery actually occurred, the MRI films, previous employment records, and records from any preexisting injuries.

---

[4] Reserves represent the dollar amount that GEICO can reasonably expect to pay for complete settlement of a claim, including anticipated allocated expenses.

On December 10, 2009, Guarnieri wrote a letter to GEICO stating that Anderson was undergoing surgery that day, reminding GEICO of the policy limits demand, and advising that the demand for the policy limits would remain open until 5p.m., on December 11, 2009. Subsequently, GEICO continued to request additional records.

On January 15, 2010, Anderson filed suit against the insureds. On March 30, 2010, GEICO advised Guarnieri that it would tender the policy limits. This offer was not accepted. Subsequently, following a jury trial, a verdict was returned in favor of Anderson and a Final Judgment was entered in her favor in the amount of $398,097.82.

Plaintiffs' expert in this case, Peter Knowe, a former insurance adjuster and executive, opined that, as of October 8, 2009, GEICO had sufficient medical information to value Anderson's liability claim as being "greatly in excess" of the $100,000 policy limit. At that time, GEICO was aware that Anderson suffered a herniated disc with nerve root impingement at the L5-S1 level as a result of the collision. Knowe explained:

> [A]s soon as you have a herniated disc on a woman of this age, that in and of itself verifies for insurance professionals that this claim is always worth in excess of a hundred thousand dollars. Her subsequent care and treatment may tend to increase that number as we go forward, but it never gets less than that.

Knowe also opined that Geico's offers of $2,581.16, on November 12, and $2,928.56, on November 19, 2009, which allocated nothing for future medical expenses and only $500 for non-economic damages, were unreasonable "lowball offers" that grossly deviated from insurance industry custom and practice. The record reflects that GEICO admitted that the initial offer was at the "bottom end of the negotiation range."

With respect to the $22,500 offer, Knowe opined that a reasonable evaluation of a herniated disc with surgical recommendations would never yield a valuation of $22,500.

Gary Gertz, GEICO's former regional claim manager for the continuing unit that handled Anderson's claim, testified that GEICO should "hold the line" and refuse to settle whenever GEICO believed it had any "rational basis" for its lower valuation of a liability claim. Gertz explained that paying more on one claim "simply because an attorney asked for it" could "set the value of the next 100, 1,000, 5,000 claims" higher. According to Gertz, even where GEICO's "evaluation" of a claim was only a "couple of grand" less than the claimant's settlement offer, GEICO would force the injured claimant's attorney to file a lawsuit against GEICO's insured, without regard for the exposure its insured faced. Gertz believed his unit of claim managers and adjusters should encourage more cases to go to trial to "send a very strong and clear message to the plaintiff's bar about [GEICO's] attitude and [GEICO's] capabilities."

Knowe opined that allowing average loss payments to influence settlement decisions, in the manner described by Gertz, grossly deviated from insurance industry custom and practice. Additionally, Knowe opined that GEICO's practice of considering average loss payments in its evaluation of its claim-handling employees' performance is a deviation of industry standards because it "puts pressure on the adjusters to artificially create a lower average loss payment as a result of underpaying claims."

Knowe also opined that GEICO's constant requests for more information, like Anderson's employment records and information related to any prior injury, were unnecessary to reasonably evaluate Anderson's claim.

GEICO moves for summary judgment arguing that no reasonable jury could conclude that it acted in bad faith with respect to Anderson's claim. The record reflects numerous disputed material facts on this issue. The Court now turns to the relevant law.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions,

answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## **DISCUSSION**

### I. Relevant Law

In *Berges v. Infinity Insurance Company,* 896 So. 2d 665 (Fla. 2004), the Florida Supreme Court explained the duty of an insurance company, like GEICO, to act in good faith as follows:

> An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. The insurer must investigate the facts, give fair consideration to a settlement offer that is

> not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

*Id.* at 668-69 (alteration omitted) (quoting *Boston Old Colony Ins. Co. v. Gutierrez,* 386 So. 2d 783, 785 (Fla.1980)). The insurer has a duty to act "with due regard for the interests of [the insured]" and to manage the claims against the insured with "the same degree of care and diligence" that the insurer would have used in managing its own business. *See id.*

To assess whether the insurer has fulfilled this good-faith duty, the court must review the "totality of the circumstances." *Berges*, 896 So. 2d at 680 ("In Florida, the question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard."). The focus must remain on the actions of the insurer. *See id.* at 677.

"In most cases, the inherently flexible nature of the 'totality of the circumstances' standard renders a bad-faith claim unsuitable for summary disposition." *Moore v. GEICO Gen. Ins. Co.*, 633 F. App'x 924, 927-28 (11th Cir. 2016) (citing *Berges*, 896 So. 2d at 672 ("[T]he issue of bad faith is ordinarily a question for the jury....")).

**II.     Analysis**

After reviewing the "totality of the circumstances" in this case, the Court concludes that the record reflects facts that could permit a jury to find that GEICO acted in bad faith. In other words, this case, like most bad-faith cases, presents a genuine dispute that requires a jury's resolution.

For example, Knowe's testimony creates a genuine issue for trial. Knowe testified that GEICO's handling of the Anderson claim deviated from industry standards in several key respects. *See Moore*, 633 F. App'x at 930-31 (reversing the district court's entry of summary judgment in favor of GEICO on the plaintiff's bad-faith claim based, in relevant part, on the district court's failure to consider the plaintiff's expert testimony). Remarkably, GEICO does not address or reference Knowe's expert opinion anywhere in its motion.

In addition to Knowe's testimony, there is also evidence suggesting that GEICO did not evaluate Anderson's claim from the perspective of a reasonable insured facing unlimited exposure. A jury could find that GEICO's main concern was to avoid raising its average loss payments.

In sum, a jury could find that GEICO did not handle Anderson's claim with the same degree of care and diligence that GEICO would have used to handle its own affairs, and these failures accordingly could support a conclusion that GEICO acted in bad faith.

It is therefore **ORDERED AND ADJUDGED** that Defendant GEICO General Insurance Company's Motion for Summary Judgment (Dkt. 98) is denied.

**DONE** and **ORDERED** in Tampa, Florida on May 12, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Even\2015\15-cv-240.ins-bad-faith-msj-98-deny.wpd