# CHAPTER III

## RESERVING

### I. BASIC RESERVING POLICY

A "reserve" is the dollar amount that the Company can reasonably expect to pay for a complete settlement of the claim, including anticipated allocated expenses. It is based on the facts known at the time the reserve is established or adjusted.

Claim reserves must be established on the basis of probable cost based on present values. A probable cost reserve is that amount of money that the best available judgment indicates it will cost to pay all future losses and expenses under that particular coverage. Present value means that present costs are used to estimate the value of a future damage settlement.

### II. IMPORTANCE OF PROPER RESERVES

It is impossible to overemphasize the importance of establishing and maintaining accurate claim reserves. For management to accurately evaluate the company's financial position, it must have assurance that claim reserves are appropriate.

A reserve should be established as soon as it is <u>probable</u> that a claim may be made. We do not establish a reserve based on the mere possibility that a claim will be made, nor do we fail to reserve for a probable claim even if we believe it can be successfully defended. <u>Reserve adjustments should be made timely as the facts of each case warrant.</u>

Examples:

\* 1. Insured calls in the at-fault loss; indicates he has damage to his vehicle and wants to make a COL claim; indicates there was no damage to the claimant's vehicle.

   Do not open a property damage reserve at this time. You must speak to the claimant first. Open a property damage reserve if he tells you that there is damage to his vehicle.

\* 2. Insured calls in the at-fault loss; indicates he has damage to his vehicle; indicates he is unsure of the claimant had damage or not.

   Do not open a property damage reserve at this time. You must speak to the claimant first. Open a property damage reserve if he tells you that there is damage to his vehicle.

III-1

\* 3. Insured calls in the at-fault loss; indicates he has damage to his vehicle; indicates there may have been damage to the claimant's vehicle or property but has no info on the claimant owner and left none of his info for the claimant.

> Do not open a property damage reserve at this time. You must speak to the claimant first. Open a property damage reserve if he tells you that there is damage to his vehicle/property.

When considering the establishment of a BI feature in a no-fault state with a verbal tort threshold, a reserve should not be opened unless there is evidence that the tort threshold has been or will be pierced. An exception to this is when an attorney represents the BI claimant and the attorney, on behalf of the injured party, has placed us on notice of his representation of the claimant and his intention to prosecute a BI claim. In this situation, the BI feature should be established.

### III. TYPES OF RESERVES

The Companies use two types of claim file reserves: Average Reserves and Case Reserves.

#### A. Average Reserves

The Actuary determines the average reserve amount required for each claim reported under the various coverages by calculating the actual loss experience under each coverage. At the moment an "open feature" transaction is keyed without a specific dollar amount in the "reserve amount" field of the claim inquiry screen, the system will automatically establish the average (STAT) reserve.

Automobile claims with values of less than $50,000 are initially reserved on an average basis. <u>If the claim has a reserve value of $50,000 or more, case reserves must be established immediately</u>. If any feature, in one claim (BI, UM, UIM or PIP) has a reserve value of $50,000 or more, <u>then all BI, UM, UIM, and PIP features must have a case reserve established</u> immediately. For example, if a claim has three minor BI claims, one BI claim with a reserve value of $50,000 or more and four PIP claims, all BI and PIP claims must be placed on case reserve immediately. In this example, none of the features can be permitted to remain on "stat" reserves. Claims with a value of less than $50,000 are transferred to case reserves at the end of the second month after the reported month.

#### B. Case Reserves

This type of reserving requires the establishment of a dollar reserve under each feature involved. When case reserves are first set up, there may not be sufficient information to permit a realistic appraisal; as subsequent information is developed, the reserves must be adjusted. Establishing case reserves involves the

exercise of good judgment and the consideration of such factors as probable liability, amount of special damages, estimates of damage, nature of injuries and any permanency, probable expenses of investigation, litigation and related matters.

Reserves are established by probable cost based on present values. A probable cost reserve is based on present costs and is used to estimate paying all future losses and expenses under a particular coverage.

At the end of the second month after reported month, a 90 Day Control List (see page III-10) for each claim handler is generated for open files. Reserves for all features, with the exceptions of those noted below, should be changed from average to case basis upon completion of the a 90 Day Control List Summary in ALOG (see page III-11) during the 60 to 90 day case life period. <u>Persons with reserve authority equal to or greater than the suggested reserve must approve case reserves.</u>

Under the Claim Record Information System (CRIS), the <u>physical damage features including Comprehensive, Collision Property Damage, Loss of Use and Medical Payments, and the other listed coverages below do not have to be converted at 90 Day Control List time from average to case reserve unless the examiner estimates that the loss and expense payments under the feature will amount to $10,000 or more.</u> If the feature is to remain open after the completion of a 90 Day Control List Summary in ALOG and the exposure is not $10,000 or more, the feature remains on average reserve.

If a feature is reopened, an individual with the authority to set the reserves as indicated in TCM-50 must reopen it on a case basis.

When establishing case reserves, special damages, location of accident, permanent injuries and any other such factors are taken into consideration.

The following are coverage/claim symbols, which <u>do not</u> require case reserves unless the estimated amount of loss and expense payment are estimated to be $10,000 or more:

| Description | Coverage | Claim Symbol |
|---|---|---|
| Broad Form Collision* | Coll | CBF, CWD |
| Combined Additional Citizens Band Radio | CA PCB | PAO PCB |
| Collision | Coll | COL, CWV, CDV |

III-3

| Comprehensive | Comp | PVM, PGL, PTH, PDV, PFO, PPT, PAO, PFL, PFI, PAN, PWN, PEF |
|---|---|---|
| Mechanical Breakdown | MBI | MBB, MBO, MBS, MBE, MBD, MBT |
| Property Damage | PD | APD, APP, LPD, ADV, DPD, EPD, COP |
| Auto Home Contents | Comp | AHC |
| Stereo Buyback | Comp | PST |
| Fire, Lightning, Theft | FLT | PTH, PPT, PFI |
| Loss of Use | PD | LOU |
| Limited Collision* | Coll | LTC |
| Medical Payments Coverage | MP | MED |
| Personal Effects | PE | PEF |
| Per. Effects/Comb. Additional | PE/CA | PEF |
| Rental Reimbursement | RR | REN |
| Towing & Labor | TOW | TOW |
| Emergency Road Service | ERS | ERS |
| Uninsured Motorist Property Damage | UM | UPD |
| Underinsured Property Damage | UM | XPD |

\* = MI Only

GCM 00025

The following are coverage/claim symbols, which do require case reserves:

| | | |
|---|---|---|
| Uninsured Motorist Bodily Injury | UM | UBI, UMD, UMS, UBX |
| Excess Underinsured Bodily Injury | UM | XBI, UMB |
| Underinsured Bodily Injury | UM | UIM, UIX |
| Bodily Injury | BI | ABI, BID, RBI, DBI, DPR, LBI |
| Basic Personal Injury Protection | PIP | NBB, NBD, NBS, NDB NBF, NBI, NBW, NDF NBM, NBR, NBA, NWL FNL, DBC |
| Basic Preferred Provider Organization | PPO | NPA, NPM, NPR, NPS, NPW, NPC, NPL, NCC, NCR |
| Additional Personal Injury Protection | APIP | NEI, NEM, NEF, NES, NER, NEW, NEA, NEB |
| Additional Preferred Provider Organization | APPO | NAA, NAM, NAR NAS, NAW, NDM, NDR |
| Medical Payments Coverage | MP | LER, MEB |
| Extraordinary Medical Benefits | EMB | EMB |
| Accidental Death and Disability | ADD | ADE, ADI |

III-5

6-28-02

GCM 00026

IV. **DEVELOPMENTAL RESERVES**

This reserve is developed by the Actuary to compensate for the impact of inflation on claims department establishment of "present values reserves."

V. **ESTABLISHING, ADJUSTING, MAINTAINING RESERVES**

Examiners and adjusters must carefully analyze initial loss reports and indicate the features involved. Reserves should be established for each feature when a claim appears probable, but not for coverages under which there is no probability of a claim. As the character of the file changes, it may be necessary to adjust the feature reserves. Reserves may be changed at any time. The effectiveness of our reserve procedures depends on the examiner's or adjuster's ability to identify the need to open, close, or revise the reserves as the facts of the case warrant.

Reserves are subject to the guidelines listed in the next section with the requirement that the responsibility for establishing and maintaining all case reserves is vested with Supervisors, Managers, Directors, RLA's and AVP's. This responsibility cannot be delegated and the authorizing party should review thoroughly the file content prior to extending reserve authority. <u>A Supervisor, Manager, Director or RLA</u> must authorize all reserves under Bodily Injury, Uninsured and Underinsured Motorists Bodily Injury Coverage.

A C-86 Manager/Supervisor Reserve Worksheet form (See Exhibit 1, Page III-17) should be completed for each claim on the 90 Day Control List, accounting for each BI, UM or UIM feature and on any subsequent reserve change under these coverages.

BI, UMBI and UIM loss and expense reserves include an "inflation factor." See Exhibit 2, Page III-18 for current inflation trends.

Examiners and adjusters are responsible for reviewing the accuracy of the reserves <u>each time the file crosses the desk.</u>

VI. **GUIDELINES FOR ESTABLISHING RESERVES**

Automobile claims with exposure of $50,000 or more under one feature or a combination of features should be placed on case reserve immediately.

- All case reserves must be approved by persons with settlement authority equal to or greater than the reserve amount, and where BI, UM or UIM reserves are concerned, the reserve must be approved by a supervisor, manager or director.

- All changes in reserves that will result in the new reserve exceeding the examiner's or adjuster's settlement authority must be approved by a claims associate who has

III-6

- authority to approve the new reserve. See TCM-50 for loss/expense and reserve authorization guidelines.
- 
- Supervisors and Claims managers should approve and review reserves at all 90 day, 6 month and 18 month file reviews.

- Reserves should be changed if the value of the claim changes by $300.00 or more. Adjustments of less than $300.00 should not be made.

- Although it is not necessary to reopen every closed file for the purpose of making a loss or expense payment, premature closure of a file should be avoided. Closed files must be reopened to accommodate loss or expense payments of $300.00 or more.

- We must have detailed facts about the precise nature of injuries, treatment and prognosis to ensure accurate reserves. This is particularly important during the first two months of the case. Examiners and adjusters must obtain complete information promptly from claimants and attorneys and be consistently mindful of reserve maintenance.

\* 
- A negative reserve occurs if a payment exceeds the reserve amount established under a specific feature. Our claim systems prevent a negative reserve from occurring; loss payments cannot be issued unless there are reserves established in excess of the loss payment. Therefore, before a payment can be issued, the reserve must be increased to a sufficient amount.

- Catastrophic PIP cases can present a unique problem in accurately predicting case reserve amounts. The type of injury, treatment and rehabilitation periods vary with each claimant. If, after considering all factors, the examiner or adjuster still questions the proper reserve amount, he or she should ask the supervisor or manager for assistance.

\* 
- When settlement of a pending case has been negotiated, and the file will be closed within the same calendar month, no reserve adjustment is necessary if the payment is less than the reserve amount.

- Features involving first party physical damages need not be placed on case reserve unless loss and expense are expected to amount to $10,000 or more.

- When a reserve is to be increased <u>beyond</u> regional authority, it may be necessary to call Claims Home Office Legal for approval in order to complete a change before the end of the current month. The Control File Alert Form may also be used to obtain a reserve change (see Exhibit I, Chap. XIII).

- Do not set an inadequate reserve as an interim reserve while awaiting approval from appropriate claims attorney or AVP of Claims Home Office

III-7

11-15-05

GCM 00028

- Telephone calls to Claims Home Office Legal (CHOL) are required for reserve approval on new control files when it will take more than 5 days to get the Control Alert Form to CHOL. Telephone calls are also required when we are within 5 days of the end of the month. Otherwise, the Alert Form may be sent with a recommended reserve.

## VII. RESERVE INCREASE PROCEDURES

When a file is considered for control status (Chapter XIII) and a reserve increase is warranted, a representative from the region (the examiner, manager, or RLA) may call Claims Legal to review the case. This will include providing the Claim Home Office Legal Attorney with the claim number, insured's name, loss location, date of loss, policy limits, facts and circumstances of the loss, and injuries to the claimant(s), age(s), and occupation(s). Notes will be posted to ALOG

The region will recommend a new reserve figure. If the Claims Home Office Claims Attorney is in agreement, it is approved. If not, advice is given to the regional representative on what is appropriate under the circumstances. Approval of the appropriate reserve adjustment is transmitted via ALOG/SYSM. In addition, a notation is placed on ALOG that the file is to be submitted to Claims Home Office in the near future as a control file. ALOG approval of the reserve adjustment is usually done within 24 hours of the phone call and should not exceed two business days. Alternatively, a reserve adjustment may be recommended on a Control File Alert Form.

If a reserve increase has been authorized, but the file has not been placed on control soon after confirmation of the reserve adjustment, either a phone call is placed to the examiner or message via SYSM/ALOG is sent to the examiner requesting that the file be placed on control.

## VIII. THE CLAIMS SYSTEM AND CLAIMS CONTROL LISTS

The CRT/PC is used for all reserve changes. The systems manual provides the procedures to follow. The following forms are used to review and change reserves and to review file handling:

| 90 Day Control List |
| --- |
| 6 Month Control List |
| 18 Month Control List |

III-8

A. <u>90 Day Control List</u>

1. When using this computer-produced list, the supervisor combines file review with changing reserves from average to case for each claim on the list. The list is produced monthly and shows each open file, which has aged for two months from reported date. A 90 Day Control List summary <u>must be completed by the end of the third month at which time all open features still on average reserve will be transferred to case reserve</u>.

2. Claims handlers must create a 90 Day Control List Summary in ALOG for every claim on the 90 Day Control List. Supervisors and managers review each summary and give direction, comments and instructions in ALOG. Each Summary and supervisor/manager review must be completed by the end of the month in which the 90th day falls.

3. A sample of a 90 Day Control List is on the next page and a sample of a 90 Day Control List Summary Format follows.

REPORT NO. CLL50M-101
REPORT DATE 12/29/01

ADJUSTER CODE: XXXX
FCC - 05

GEICO PROPERTY/CASUALTY COMPANIES
**90 DAY CONTROL LIST**
RELEASE DATE
DECEMBER 29, 2001

PAGE 256
RUN DATE 12/29/01

XXXX

| CLAIM NUMBER | CLMNT | CLAIM SYMBOL | CO | REPORT DATE |
|---|---|---|---|---|
| 0018565598010101101 | 04 | APD | 01 | 1001 |
| | 05 | APD | 01 | 1001 |
| | 06 | APD | 01 | 1001 |
| 0019304400101114 | 02 | LOU | 01 | 1001 |
| 0061300730101052 | 01 | COL | 13 | 1001 |
| 0090599370101091 | 02 | POA | 13 | 1001 |
| 0102558420101044 | 02 | LOU | 01 | 1001 |
| 0122333870101019 | 02 | APD | 01 | 1001 |

III-10

6-28-02

GCM 00031

## CONTROL LIST SUMMARY FORMAT

1. Loss Description - What happened?
   Is investigation complete? If not, why?

2. Coverage - Is coverage in order? Any coverage problems?
   Any limits problem?

3. Liability - Who is at fault? Why?
   Comparative negligence? What is the % attributed to each?

4. Damages - What features are still open? Name claimant and feature number.
   Note any payments made.
   Any vehicle inspections still pending?
   Any subrogation potential?

   List each injured party's name, age and occupation.
   - Diagnosis (What is the injury?)

   - History (Medical background, related injuries, prior injuries?)

   - What sort of treatment are they receiving? How often? What type of provider?
     - MD    Medical doctor
     - DC    Chiropractor
     - DO    Osteopath
     - RPT   Registered Physical Therapist
     - LMT   Licensed Massage Therapist

   - Prognosis. How much longer will treatment continue? Additional tests recommended? Other treatment recommended? Length of future treatment?

   - What are the total bills paid to date? Any outstanding bills? Projected future bills?

   - Will they have a loss of earnings claim? How much? Any disability?

5. Course of Action - What needs to be done to close?
   What can we do to resolve?
   Address each open injury feature. Does any feature need a reserve?
   If so, what amount do you recommend?

*

III-11

11-15-05
GCM 00032

*   Every review should include the elements set out in parts 1 thru 5 above. Reserves should be addressed when completing Part 5. The claims representative, as part of the review process, should discuss each open feature and comment on the reserve for that feature. If no change in reserve is needed, the file should reflect that the reserve was considered and left unchanged. If a change in the reserve is needed, the claims representative should describe the new information which led to this conclusion. The claims representative should then make a recommendation for increasing or decreasing the reserve for the particular feature. Every review <u>must</u> specifically address reserves for every open injury feature. Management personnel are responsible for insuring that reserves are considered and that the consideration is documented when completing all 90 day (C-71), 6 month (C63) and 18 month (C-178) reviews.

CONFIDENTIAL

11-15-05
GCM 00033

B. <u>6 Month Control List</u>

    1. The 6 Month Control List is used to identify all open claim files that aged five months from reported month.

    2. Claims handlers must create a 6 Month Control List Summary in ALOG for every claim on the 6 Month Control List. Supervisors and managers review each summary and give direction, comments and instructions in ALOG.

\*     3. All reserves should be reviewed for accuracy and changed in the Claims system if necessary. Supervisors and managers must document ALOG with respect to the adequacy of the reserves.

    4. All 6 Month Control List Summaries and supervisor/manager reviews by. the end of the 6th month

    5. A sample of a 6 Month Control List is on the next page.

REPORT NO. CLL50M-201
REPORT DATE  11/24/01

ADJUSTER CODE: XXXX
FCC    -    05

GEICO PROPERTY/CASUALTY COMPANIES
**6 MONTH CONTROL LIST**
RELEASE DATE

NOVEMBER 24, 2001

PAGE     84
RUN DATE 11/24/01

| CLAIM NUMBER | CLMNT | CLAIM SYMBOL | CO | REPORT DATE |
|---|---|---|---|---|
| 0094287530101093 | 01 | COL | 13 | 0601 |

CONFIDENTIAL

III-14

6-28-02
GCM 00035

C. <u>18 Month Control List</u>

1. The 18 Month Control List is used to identify all open claim files that aged 17 months from reported month.

2. Claims handlers must create an 18 Month Control List Summary in ALOG for every claim on the 18 Month Control List. Supervisors and managers review each summary and give direction, comments and instruction in ALOG.

\* 3. All reserves should be reviewed for accuracy and changed in the Claims system if necessary. Supervisors and managers must document ALOG with respect to the adequacy of the reserves.

\* 4. All 18 Month Control List Summaries and supervisor/manager reviews must be completed by the end to the 18th month.

5. A sample of an 18 Month Control List is on the next page.

GCM 00037

CONFIDENTIAL

REPORT NO. CLL50M-201
REPORT DATE 11/24/01

PAGE 84
RUN DATE 11/24/01

GEICO PROPERTY/CASUALTY COMPANIES
18 MONTH CONTROL LIST
RELEASE DATE

NOVEMBER 24, 2001

ADJUSTER CODE: XXXX
FCC - 05

| CLAIM NUMBER | XXXX | CLMNT | CLAIM SYMBOL | CO | REPORT DATE |
|---|---|---|---|---|---|
| 009428753010193 | | 01 | COL | 3 | 0600 |

CONFIDENTIAL

III-16

6-28-02
GCM 00038

IX. **INCURRED BUT NOT REPORTED CLAIMS (IBNR)**

The total amount of money, which the Company earmarks for claim purposes, includes both reported claims and those incurred but not reported. Reported claims are those for which claim files have been established. Incurred but not reported claims are those for which claim files have not been established although the accident or loss <u>has</u> occurred and we may or may not have the report at the Company. Actuary determines the reserve for incurred but not reported claims.

X. **REINSURANCE RECOVERABLE RESERVES**

Reinsurance recoverable reserves are not actually reserves but are estimates of the amount in excess of our retention, which we can expect to recover from the reinsurance carrier. Automobile and homeowners, CPL and pacesetter reinsurance recoverable reserves will be established, maintained and closed by Claims Home Office. A copy of the accounting document will be sent to the claims file for retention.

Under the CRIS system, there is no field for the entry of a reinsurance recoverable reserve and these reserves are accounted for in a manual account maintained in Claims Home Office. Where a reinsurance reserve is being maintained on a claim processed under the CRIS system, the reinsurance indicator should be activated in the CRIS system so that the claim is identified as having reinsurance involvement.

Under PIPS, reinsurance recoverable reserves are established and maintained by PIC's Claims Processing Unit at the direction of the Claims Home Office.

XI. **REINSURANCE RECOVERABLE PAYMENTS**

The Claims Home Office handles reinsurance recovery payments. Examiners must maintain their claim files on an open basis until notified of the receipt of the reinsurance recovery payment.

XII. **REINSURANCE TREATY**

The Company had a reinsurance treaty to protect it against large losses under its policies. Between April 1, 1993 and August 7, 2001, losses were reinsured above $1 million to a limit of $10 million.

As of August 7, 2001, the Company will be self-insured for most of its policies. The exceptions will be motorcycle policies and all policies written in New Hampshire. They will continue to be covered under a reinsurance treaty until February 7, 2002. After February 7, 2002, the Company will be totally self-insured.

**EXHIBIT I**

## MANAGER/SUPERVISOR RESERVE WORKSHEET
## BI-UM-UIM

Page _____ of _____

CLAIM NUMBER _____   POLICY LIMITS _____

CLAIMANT NAME _____   % Chance of suit   0-33   34-67   68-100

- PROBABLE CURRENT LOSS
- PROBABLE CURRENT EXPENSE
- TOTAL PROBABLE CURRENT COST
- INFLATION FACTOR
- NEW NET RESERVE
- **Approval Initials & Date**

CLAIMANT NAME _____   % Chance of suit   0-33   34-67   68-100

- PROBABLE CURRENT LOSS
- PROBABLE CURRENT EXPENSE
- TOTAL PROBABLE CURRENT COST
- INFLATION FACTOR
- NEW NET RESERVE
- **Approval Initials & Date**

CLAIMANT NAME _____   % Chance of suit   0-33   34-67   68-100

- PROBABLE CURRENT LOSS
- PROBABLE CURRENT EXPENSE
- TOTAL PROBABLE CURRENT COST
- INFLATION FACTOR
- NEW NET RESERVE
- **Approval Initials & Date**

CLAIMANT NAME _____   % Chance of suit   0-33   34-67   68-100

- PROBABLE CURRENT LOSS
- PROBABLE CURRENT EXPENSE
- TOTAL PROBABLE CURRENT COST
- INFLATION FACTOR
- NEW NET RESERVE
- **Approval Initials & Date**

**Cumulative Totals:**
- **TOTAL PROBABLE CURRENT LOSS**
- **TOTAL PROBABLE CURRENT EXPENSE**
- **TOTAL PROBABLE CURRENT COST**
- **TOTAL NEW NET RESERVE**

III-18

11-15-05
GCM 00040

EXHIBIT 2

## BODILY INJURY INFLATION RATE: 10.6%

| MO  | FACTOR | MO  | FACTOR | MO  | FACTOR |
|-----|--------|-----|--------|-----|--------|
| 1.  | 1.01   | 21. | 1.19   | 41. | 1.41   |
| 2.  | 1.02   | 22. | 1.20   | 42. | 1.42   |
| 3.  | 1.03   | 23. | 1.21   | 43. | 1.43   |
| 4.  | 1.03   | 24. | 1.22   | 44. | 1.45   |
| 5.  | 1.04   | 25. | 1.23   | 45. | 1.46   |
| 6.  | 1.05   | 26. | 1.24   | 46. | 1.47   |
| 7.  | 1.06   | 27. | 1.25   | 47. | 1.48   |
| 8.  | 1.07   | 28. | 1.27   | 48. | 1.50   |
| 9.  | 1.08   | 29. | 1.28   | 49. | 1.51   |
| 10. | 1.09   | 30. | 1.29   | 50. | 1.52   |
| 11. | 1.10   | 31. | 1.30   | 51. | 1.53   |
| 12. | 1.11   | 32. | 1.31   | 52. | 1.55   |
| 13. | 1.12   | 33. | 1.32   | 53. | 1.56   |
| 14. | 1.12   | 34. | 1.33   | 54. | 1.57   |
| 15. | 1.13   | 35. | 1.34   | 55. | 1.59   |
| 16. | 1.14   | 36. | 1.35   | 56. | 1.60   |
| 17. | 1.15   | 37. | 1.36   | 57. | 1.61   |
| 18. | 1.16   | 38. | 1.38   | 58. | 1.63   |
| 19. | 1.17   | 39. | 1.39   | 59. | 1.64   |
| 20. | 1.18   | 40. | 1.40   | 60. | 1.65   |

CONFIDENTIAL!

6-28-02
GCM 00041